TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00641-CV






Diana Palacios, Appellant



v.



Housing Authority of the City of Crystal City, Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 93-14088, HONORABLE HUME COFER, JUDGE PRESIDING 






 In this appeal of a whistleblower lawsuit, we consider whether any evidence exists that a
violation of law occurred. Appellant Diana Palacios sued appellee, the Housing Authority of the City of
Crystal City, Texas, claiming that the Housing Authority discharged her in violation of the Texas
Whistleblower Act. See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583,
610 (Tex. Gov't Code Ann. § 554.002, since amended) ("Act"). The suit was tried to a jury, which
returned a verdict for Palacios. On the Housing Authority's motion for judgment notwithstanding the
verdict, the trial court rendered judgment that Palacios take nothing. We will affirm the judgment of the trial
court.


THE CONTROVERSY

 In her first three points of error, Palacios argues that the trial court erred in rendering
judgment notwithstanding the verdict. The statute governing Palacios' retaliation claim states:

A state agency or local government may not suspend or terminate the employment of or
discriminate against a public employee who in good faith reports a violation of law to an
appropriate law enforcement authority.



Act § 554.002.

 The trial court submitted two questions to the jury on liability. The first asked, "Did Diana
Palacios participate in sending Defendant's Exhibit 6 to HUD for the purpose of reporting to HUD any
conduct, by one or more Housing Authority Board members, that occurred before August 23, 1993 and
that Diana Palacios in good faith believed was a violation of law?" The second asked, "Was Diana
Palacios' termination on September 4, 1993 retaliation for her part in Defendant's Exhibit 6?" The jury
answered "yes" to both.

 A trial court can disregard a jury's findings and grant a motion for judgment notwithstanding
the verdict only when no evidence exists on which the jury could have made its findings. Navarette v.
Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986). In reviewing the grant of such a motion,
this Court must determine whether any evidence supports the jury's findings. We review the record in the
light most favorable to the findings, considering only the evidence and inferences that support them. Id. 
If more than a scintilla of evidence supports the findings, the judgment notwithstanding the verdict must be
reversed. Id.

 Palacios pleaded three acts that formed the basis of her retaliation claim, namely, that the
Board of Commissioners of the Housing Authority (1) required her to place the cooperative agreement of
the Housing Authority on the agenda to discuss increasing the pilot amount paid to the City without notifying
the U.S. Department of Housing and Urban Development ("HUD"), (2) suggested by-passing HUD's
budget amendment process, and (3) demanded that she disclose tenants' family income at a public board
meeting in violation of the Texas Open Records Act. Palacios renews these allegations on appeal.


BACKGROUND

 Palacios served as executive director of the Housing Authority from 1988 to September
4, 1993. She testified that in early 1993, one of the board members, Commissioner Jose Luis Barajas,
began asking her how much money each family that participated in the Housing Authority's programs made. 
Palacios told him that she believed the information was confidential and that the staff was not allowed to
release it. Commissioner Barajas nevertheless questioned how people he had seen driving new cars
qualified to be tenants, and he continued to press Palacios for the information. Following repeated
requests, Palacios told Barajas that she would ask HUD to state in writing its policy about disclosing
tenants' incomes.

 In April 1993, Commissioner Barajas came to Palacios' office and asked to see the
tenants' income forms. Palacios, in response, wrote Barajas a letter stating that she had spoken to people
at HUD about his request, that the area office of HUD in San Antonio had requested a legal opinion from
the regional office in Fort Worth, and that if the opinion provided clearance, she would do her best to
address his concern. Palacios presented her letter at a board meeting in May, after which no commissioner
asked to see the tenants' incomes. 

 In August 1993, employees of the Housing Authority drew up a list of complaints, which
Jesse Gamez, an attorney, compiled into a letter. The letter, dated August 23, was written to Diana Garcia,
the chairperson of the board, with a copy sent to HUD. Although identified at trial as defendant's exhibit
six and referred to in the jury questions quoted above, the letter was never admitted in evidence. 
Unfortunately, this letter memorializes Palacios' claim that she reported to HUD the three violations of law
in question. (1)

 On August 27, Garcia sent Palacios a letter asking her to post an agenda for a board
meeting on August 31. The agenda was to include a report listing tenants and their current family incomes
and a review of the "contractual" agreement between the Housing Authority and the City. Itemized for
discussion in executive session was the employment status of the executive director. Palacios, on August
27, took the letter containing the agenda and the employees' letter of August 23 to the HUD office in San
Antonio. On August 31, Garcia received a letter from HUD, as a result of which the board deferred taking
action on the income information requested.

 Evidence concerning the cooperative agreement and the budget, which we summarize next,
is less precise as to dates. The cooperative agreement set the pilot amounts the Housing Authority paid
various state taxing entities instead of taxes. Palacios stated that in 1993 the board wanted to change the
agreement to give more money to the City of Crystal City. To do so, however, the board would have to
amend the budget. Palacios stated that both changes required HUD's approval. 

 In 1993, Commissioner Velma Ybarra asked Palacios to initiate whatever action was
required to change the cooperative agreement. Ybarra told Palacios that the board was going to change
the agreement and that she did not want Palacios to tell HUD beforehand because she "did not want HUD
to shoot [them] down before [they] had a chance to change it." Shortly before August 31, Palacios went
to HUD to determine if the board could make the change unilaterally. She told Evido Spano, who worked
in the office of HUD's legal counsel, that the board insisted on amending the agreement. Spano advised
her that the law prohibited changing the agreement, presumably without HUD's approval. Palacios then
presented this advice to the board. Based on the advice Palacios relayed, the board deferred any further
action on the budget or the cooperative agreement.

 Because Palacios was sick, the board did not discuss the status of her employment at its
August 31 meeting. On September 1, Commissioner Ybarra asked that an agenda be posted for
September 4 to include a discussion of Palacios' employment status. At the September 4 board meeting,
Palacios' employment was terminated.


DISCUSSION

 The trial court did not state in its judgment why it disregarded the jury's verdict favoring
Palacios. At the hearing on the Housing Authority's motion for judgment notwithstanding the verdict,
however, the court stated that Palacios' testimony reflected that she had reported anticipated, rather than
actual, violations of law. We will affirm the trial court's judgment if it is correct on any legal theory that
was before it. Guaranty County Mut. Ins. Co. v. Reyna, 709 S.W.2d 647, 648 (Tex. 1986).

 We note that Garcia's letter of August 27, placing a discussion of tenants' incomes and a
review of the cooperative agreement on the meeting agenda, falls outside the scope of the first jury question,
which focuses on conduct occurring before August 23. Nothing in the record shows that a commissioner
placed the issue of tenants' incomes on a meeting agenda before August 23. This leaves, as to Palacios'
claim concerning tenants' incomes, only Commissioner Barajas' requests to see the records of tenants'
incomes and Palacios' refusal to disclose them until she received an opinion letter from HUD. We cannot
conclude that a Housing Authority commissioner, who is charged with overseeing the Authority's housing
programs and maintaining their integrity, violates a law by asking to see the records of tenants' incomes. 
At most, such a request would implicate a policy of HUD rather than a violation of law as required by the
Whistleblower Act. See Act § 554.001(1) (defining law to include federal or state statute, ordinance, or
administrative rule). Palacios does not suggest a particular statute, ordinance, or rule she believes Barajas
violated. Further, no evidence exists that any belief Palacios held that a law was violated was reasonable. 
See Wichita County, Tex. v. Hart, 917 S.W.2d 779, 784 (Tex. 1996) (good faith requires employee's
belief that law was violated to be reasonable). Indeed, the trial court focused on testimony from Palacios
that at best could be read as fearing that a law would be violated in the future.

 Concerning amendments to the budget and the cooperative agreement, the record again
contains no evidence that a commissioner placed the issues on a meeting agenda before August 23. That
the commissioners said they wanted to change the agreement without HUD's approval cannot amount to
a violation of law without concrete action having been taken to accomplish it. And again, no evidence
exists that Palacios reasonably believed that the commissioners' statements violated a law. Even if an
agenda had been requested before August 23, a public discussion among the commissioners about changing
the agreement, without a vote to do so, could hardly violate either a rule or a policy issued by HUD.
Without knowing what action the commissioners would take at a meeting, we are left merely to speculate
about the extent of any illegality. (2) Because no evidence exists that a violation of law occurred or that
Palacios reasonably believed so, we overrule points one through three. Based on our disposition of these
points, we need not address point of error four.

 In point of error five, Palacios asserts that the trial court rendered judgment notwithstanding
the verdict because it was biased against her. The statements Palacios relies on fall short of showing any
bias on the part of the trial court. We therefore overrule point five.


CONCLUSION

 Having addressed and overruled those points of error necessary to our disposition, we
affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: April 9, 1998

Do Not Publish
1. Because it is not essential to our analysis, we omit the testimony about the letter's contents.
2. The same reasoning would apply, of course, had an agenda listing the issue of tenants' incomes been
requested before August 23: the board might have called itself into executive session before reviewing
tenants' incomes, thereby avoiding a violation of any HUD policy of confidentiality or the Open Records
Act.



M>, violations of law. We will affirm the trial court's judgment if it is correct on any legal theory that
was before it. Guaranty County Mut. Ins. Co. v. Reyna, 709 S.W.2d 647, 648 (Tex. 1986).

 We note that Garcia's letter of August 27, placing a discussion of tenants' incomes and a
review of the cooperative agreement on the meeting agenda, falls outsid